UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
GEORGE BROWN,

                          Plaintiff,

          -against-

RALPHAEL MORALLES, the Superintendent,
NASSAU COUNTY DISTRICT ATTORNEY,
FREEPORT POLICE DEPARTMENT, 1ST BALDWIN
PRECINCT, SERGIO/INCORPORATED VILLAGE
OF FREEPORT DEP'T: THE VILLAGE INSPECTORS,
PAMELA ROBINSON, KATHLEEN M. RICE,
ASSISTANT DISTRICT ATTORNEY, ATM
REAL ESTATE, FREEPORT FIRE DEPARTMENT,

                          Defendants.
--------------------------------------------------------------------X
GEORGE BROWN,

                          Plaintiff,

          -against-

RALPHAEL MORALLES, the Superintendent,
NASSAU COUNTY DISTRICT ATTORNEY,
FREEPORT POLICE DEPARTMENT, 1ST BALDWIN
PRECINCT, SERGIO/INCORPORATED VILLAGE
OF FREEPORT DEP'T: THE VILLAGE INSPECTORS,
PAMELA ROBINSON, KATHLEEN M. RICE,
ASSISTANT DISTRICT ATTORNEY, ATM REAL
ESTATE, FREEPORT FIRE DEPARTMENT,
DETECTIVE KAMMSKI, 1ST BALDWIN PRECINCT,
FIRE MARSHALL JOE, FREEPORT FIRE
DEPARTMENT, OFFICER DIXON, FREEPORT
POLICE DEPARTMENT,

                          Defendants.
--------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
14-CV-1382 (SJF)(GRB)

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★  NOV 18 2014  ★

LONG ISLAND OFFICE

14-CV-2932 (SJF)(GRB)

FEUERSTEIN, District Judge:

          On July 15, 2013, incarcerated *pro se* plaintiff George Brown ("plaintiff" or "Brown")

filed a complaint against the Freeport Police Department ("Freeport Police") and the Nassau

County District Attorney ("D.A.") which was assigned docket number 13-civ-4047. [Case No. 13-civ-4047 Docket Entry No. 1 (the "First Complaint")]. A second complaint was filed on November 20, 2013 against the Freeport Police and the D.A. as well as Ralphael Moralles/the Superintendent ("Moralles"); 1st Baldwin Precinct ("First Precinct"); Sergio/Incorporated Freeport Village Department ("Sergio"); the Freeport Fire Department, Pamela Robinson ("Robinson") and ATM Real Estate and was assigned docket number 13-civ-6514. [Case No. 13-civ-6514 Docket Entry No. 1 (the "Second Complaint")]. On February 28, 2014, plaintiff filed a third complaint [Case No. 14-cv-1382 Docket Entry No. 1 (the "Third Complaint")] accompanied by an application to proceed *in forma pauperis* [Case No. 14-civ-1382 Docket Entry No. 2]. On May 1, 2014, plaintiff filed his fourth *in forma pauperis* complaint [Case No. 14-civ-2932 Docket Entry No. 1 (the "Fourth Complaint")]. On June 4, 2014, plaintiff filed an application for the appointment of counsel to represent him in each of his cases. [Case No. 14-civ-1382 Docket Entry No. 8; Case No. 14-civ-2932 Docket Entry No. 6 (collectively, the "Motions to Appoint Counsel")].

For the reasons that follow, Third Complaint and the Fourth Complaint are consolidated with the First Complaint and the Second Complaint for all purposes and shall proceed under the docket number of his First Complaint, 13-civ-4047 (the "Lead Case"). All papers filed shall henceforth bear only the Lead Case docket number and Third Complaint (assigned docket number 14-civ-1382) and the Fourth Complaint (assigned docket number 14-civ-2932), shall be administratively closed. In addition, plaintiff's Section 1983 claims seeking release from custody in the Third Complaint are *sua sponte* dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l) for failure to state a claim for relief; plaintiff's Section

2

1983 claims seeking damages in the Third Complaint and the Fourth Complaint are stayed pending the termination of the underlying criminal proceedings against him; and plaintiff's Section 1983 claims against Moralles, Robinson and ATM Real Estate in the Third Complaint and the Fourth Complaint are *sua sponte* dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l) for failure to state a claim for relief. Finally, the Motions to Appoint Counsel are denied without prejudice.

I.    Procedural Background

As noted above, plaintiff's First Complaint was filed on July 15, 2013 against the Freeport Police and the D.A. alleging civil rights violations by law enforcement officials relating to plaintiff's November 5, 2012 arrest and subsequent prosecution. *See generally* First Compl. By order dated October 9, 2014 in the first action [Case No. 13-civ-4047 Docket Entry No. 6 (the "October Order")]: (1) plaintiff's application to proceed *in forma pauperis* was granted; (2) plaintiff's Section 1983 claims seeking release from custody were *sua sponte* dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim for relief, without prejudice to filing a petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241, *et seq.*; (3) plaintiff's Section 1983 claims seeking damages were stayed pending the termination of the underlying criminal proceedings against him; and (4) the first action was administratively closed with leave to reopen within two (2) weeks of the termination of the underlying criminal proceedings against plaintiff. *See* October Order at 5-6.

On November 20, 2013, plaintiff filed the Second Complaint against the Freeport Police and the D.A. as well as Moralles, the First Precinct, Sergio, the Freeport Fire Department, Robinson and ATM Real Estate also alleging civil rights violations by law enforcement officials

relating to plaintiff's November 5, 2012 arrest and subsequent prosecution. *See generally* Second Compl. By Memorandum and Order dated January 23, 2014 in the second action [Case No. 13-civ-6514 Docket Entry No. 7 (the "January Order")]: (1) plaintiff's application to proceed *in forma pauperis* was granted; (2) the First Complaint and the Second Complaint were consolidated for all purposes; (3) plaintiff's Section 1983 claims seeking release from custody in the second action were *sua sponte* dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim for relief; (4) plaintiff's Section 1983 claims seeking damages in the Second Complaint were stayed pending termination of the underlying criminal proceedings against him; and (5) plaintiff's Section 1983 claims against Moralles, Robinson and ATM Real Estate were *sua sponte* dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l) for failure to state a claim for relief. *See* January Order at 5-14.

For the reasons that follow, Third Complaint and the Fourth Complaint are consolidated with plaintiff's First Complaint and Second Complaint for all purposes and shall proceed under the docket number of the Lead Case, 13-civ-4047.

II. Factual Background

Plaintiff's four (4) complaints allege that on November 5, 2012 plaintiff walked into the incinerator room on the first floor of the building in which he resides after smelling smoke coming from that room. First Complaint, Second Complaint, Third Complaint, and Fourth Complaint (collectively, the "Complaints" or "Compls." at ¶ IV)). Subsequently, Moralles, the superintendent of the building, entered the incinerator room and asked plaintiff about the fire, allegedly assuming that plaintiff had started the fire. Handwritten Statements ["Stat."] Annexed

4

to First and Second Complaint at 1; Third Compl. ¶ IV; Fourth Compl. ¶ IV. Plaintiff told Moralles that he did not know anything about a fire, left the incinerator room and went to his apartment. *Id.* Shortly after plaintiff entered his apartment, "Nassau police with the Freeport Police" arrived, forced their way in and searched the apartment without a warrant. Compls. ¶ IV; Stat. to First and Second Complaint, at 1-2. Plaintiff alleges he was arrested without explanation, transported by "Nassau County police" to the First Precinct and subsequently imprisoned. Compls. ¶ IV; Stat. to First and Second Complaint, at 2.

In the first action, plaintiff alleges that he has been imprisoned for a period of eight (8) months "without NO [sic] indictment." Stat. to First Complaint, at 2. In the Second Complaint, plaintiff alleges that he has been imprisoned for a period of twelve (12) months and was finally indicted on September 17, 2013. Stat. to Second Complaint, at 1. In the Third Complaint, plaintiff claims to have been incarcerated "since 15 Months and Next month in March 2014 It'll [sic] be my 2 years, that I'll also be incarcerated at Nassau County Jail. Third Compl. at 5. Plaintiff explains in the Third Complaint that "Right Now I'm going to Court for my Pre Trial hearing on Thursday, March 6, 2014. It'll be about my false statement, that I've did [sic] signed [sic] And Also saying A video statement on Monday night, November 5, 2012 At the 1st Baldwin Precinct." *Id.* In the Fourth Complaint, plaintiff alleges that "[r]ight now, I've been incarcerated since 17½ months or almost 18 months." Fourth Compl. at 6.

In the Second Complaint, plaintiff additionally alleges that Sergio, a Village inspector, and a fire marshal from the First Precinct "were at [his] Apartment at the Time [of his November 5, 2012 arrest]." Stat. to Second Complaint, at 1. According to plaintiff, he was: (i) "forced to Confessed [sic] by The Authorities And Coecresion [sic] by Them tool [sic] as well[;]" (2)

5

"frustrated...Intimidated[] [and] Manipulated by them for having [him] to signed [sic] a statement that were [sic] False And Going on video to say a False statement At The First Precinct[;]" and (3) "'Scared!' [him] To say That [he] did The Arson 2nd Degree." *Id.* Plaintiff alleges that he "finally remembered" that "[t]he Authorities" threatened "to have their unknown People to retaliate [against him]" if he filed a civil rights complaint against them. *Id.* In addition, the Second Complaint alleges, *inter alia*: (1) that "these cops from the [F]irst Precint [sic] stared at [plaintiff], While [he] was using their Mens Bathroom[,]" (Stat. to Second Complaint, at 2); (2) that "[t]hese Nassau County cops Have done Sexual Harassment to [him] and Racist, Because [he is] An African Black American[,]" (*Id.*); (3) that he has been discriminated against by the "Authorities" and the D.A. because of his race and diagnosis of mental illness (Second Compl. ¶ V); and (4) that he has been "Persecuted and Retaliated" against by the police because Moralles told them that he is "a Gay Homosexual." *Id.*

In the Second Complaint, plaintiff also alleges that as he was entering his apartment building on October 2, 2012, Robinson, another tenant in the building, tried to spray him with pepper spray and her son "snucked [sic] Behind [him], To put a big bruise on the Right side of [his] face." Stat. to Second Complaint, at 3. Plaintiff alleges that the Freeport Police "took [f]orever[,]" (*id.*) to arrive after he called them, in "retaliation against [him] from...Moralles And The ATM Real Estate that owns the Building[,]" (*id.*), and that before they arrived, Robinson "ha[d] told all the tenant neighbors outside...To tell the cops[] That They didn't saw [sic] What had happened." *Id.* Plaintiff alleges that the police did not let him press charges against Robinson's son "[b]ecause [he] Didn't have any witnesses on [his] side And It [sic] wasn't no camera in the building." Stat. to Second Complaint, at 4. In addition, plaintiff alleges

6

that he had previously told Robinson he was "[l]ockup [sic] back in 2002 for setting A cardboard dumpster on fire" (*id.*) and that Robinson "backstabbed [him] in the face for no Reason" (*id.*) by telling the police that he had been "locked up for Arson several years ago in Rikers Island." *Id.* According to plaintiff, when he was arrested on November 5, 2012 and charged with arson in the second degree, the police told him "That This is another reason why…[he] gotten 'blame!' [sic]…Because [he had] a Previous Record For The Same thing." *Id.*

In the third action, plaintiff also claims that the "cops had flipped a quarter on the floor Inside their office at the 1st Baldwin Precinct and Have said! [sic] If the quarter does Lands [sic] on Heads that means ! [sic] I've won! And If it falls on Tales [sic], that means! [sic] I'll have lose! [sic]. Stat. to Third Complaint, at 5. According to plaintiff, [t]hey were playing dice with money, Like their [sic] were also gambling money on the Floor." *Id.* Plaintiff explains, "I am refiling Again to sue for definition [sic] of character, because of the Superintendent Raphael Moralles for pressing the charges against me and 'Blaspheming! [sic] me" That He've [sic] thought! [sic] I did the Arson." *Id.* Plaintiff claims to have been slandered by Moralles for "accusing me for something, [sic] that I've [sic] didn't do at All." *Id.* Plaintiff alleges that he is suing "Kathleen M. Rice for not having any kind of patience! [sic] and not understanding the reason why, [sic] I've signed a False Statement and Saying a video statement at the 1st Baldwin Precinct." *Id.* Plaintiff is "suing Kathleen M. Rice for $20 Billion Dollars. Also for False Incarceration at Nassau County Correctional Center, and for Having the District Attorney to keep me in prison! [sic] still for 15 months." *Id.* According to plaintiff, Moralles "always stay [sic] drunk all the time…All of these defendants will definately! [sic] leave me alone! After all of this Triple civil rights complaint Lawsuit. Once! [sic] the Nassau District Attorney find me innocent!

7

First with my case. [sic] Which right now, I have Arson 2nd Degree, because the Authorities made me confessed [sic] by signing a False Statement and saying a video statement." *Id.* at 7. Plaintiff alleges that the "cops didn't also even have [n]o [p]atience! [sic] For me to 'explained!' [sic] All of my side of the story of what happened! [sic] That night on Monday, November 5, 2012." *Id.* at 8. Plaintiff also claims that Moralles would "go to help an [sic] Hispanic tenant or White tenant" skipping over plaintiff because plaintiff is Black and on social security disability and received social services food stamps. *Id.* In the fourth action, plaintiff also claims defendants "were hurting [his] reputation [sic] defaming, By having [him] also [sic] to make false and harmful statements, so as to hurt [his] reputation [sic] of slander and libel." Stat. to Fourth Complaint, at 6.

In the section of the form complaint asking plaintiff to describe his injuries and state the medical treatment he received, plaintiff wrote: (1) the word "None" in the First complaint (First Compl. ¶ IV.A); (2) nothing in the Second Complaint, i.e., he left that section of the complaint blank (Second Compl. ¶ IV.A); and (3) "No Injuries And No Medical Treatment" in Third Complaint and the Fourth Complaint. Third and Fourth Compls. ¶ IV.A. In the First Complaint, plaintiff seeks to recover damages in the amount of "$1,000,00" for the time he has spent in jail and to be released from custody. First Compl. ¶V; Stat. to the First Complaint, at 2. In the Second Complaint, plaintiff seeks to recover damages in the amount of five million dollars ($5,000,000.00) "for all the Persecution And Pain[,]" and to be discharged or released from prison. Second Compl. ¶ V; Stat. to the Second Compl., at 2. In the Third Complaint, plaintiff seeks to recover damages in the amount of "$20 Billion Dollars for Definition [sic] Of Character, Because Ralphael Moralles the Superintendent had pressed the charges against me and

8

"Blaspheming! Me, that He've thought! I did the Arson." Third Compl. ¶ V. Plaintiff also seeks to recover a damages award in the amount of $20 billion against "Kathleen M. Rice for not having any kind of patience! And not understanding the reason why I've signed a false statement and saying a video statement at the 1st Baldwin Precinct." *Id.* Finally, the Fourth Complaint seeks to recover a damages award of $100 million. Fourth Compl. ¶ V.

III. Discussion

    A. Consolidation

Rule 42(a) of the Federal Rules of Civil Procedure provides that "[i]f actions before the court involve a common question of law or fact, the court may...consolidate the actions; or [] issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a); *Devlin v. Transp. Commc'ns Int'l. Union*, 175 F.3d 121, 130 (2d Cir. 1999). District courts have broad discretion to determine whether consolidation is appropriate, *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990), and may consolidate actions under Rule 42(a) *sua sponte. See Devlin*, 175 F.3d at 130. Consolidation "should be prudently employed as a valuable and important tool of judicial administration...invoked to expedite trial and eliminate unnecessary repetition and confusion." *Devlin*, 175 F.3d at 130 (internal quotations and citations omitted). In determining whether consolidation is appropriate, the court must consider:

> Whether the specific risks of prejudice and possible confusion are overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on the parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Johnson*, 899 F.2d at 1285 (quotations, brackets and citations omitted).

9

Moreover, cases may be consolidated where, as here, there are different parties in the complaints. *See Werner v. Satterlee, Stephens, Burke & Burke*, 797 F. Supp. 1196, 1211 (S.D.N.Y. 1992) ("The fact that there are different parties in this action does not mean this case should not be consolidated."); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 402 (S.D.N.Y. 2004) (holding that the fact that certain defendants are named in only one or some of the complaints to be consolidated does not preclude consolidation).

All four (4) actions were recently filed, have not yet proceeded to discovery and involve similar allegations relating to civil rights violations by law enforcement officials arising from plaintiff's November 5, 2012 arrest and subsequent prosecution. There will be minimal, if any, prejudice or confusion to the parties in consolidation these actions. Therefore, in the interests of judicial economy and efficiency, and to minimize the expense and burden on all parties in prosecuting and defending multiple lawsuits, the Third Complaint and Fourth Complaint are consolidated with plaintiff's earlier complaints for all purposes and will proceed under docket number 13-cv-4047. All papers filed in these actions shall henceforth bear *only* docket number 13-cv-4047 and the caption of this consolidated action shall be amended in accordance with this Order and the complaints assigned docket numbers 14-civ-1382 and 14-civ-2932 shall be administratively closed.

B.    *In Forma Pauperis* Applications

Upon review of plaintiff's declarations in support of his applications to proceed *in forma pauperis* on the Third Complaint and the Fourth Complaint, the Court determines that plaintiff's financial status qualifies him to commence these actions without prepayment of the filing fees.

10

*See* 28 U.S.C. § 1915(a)(1). Therefore, plaintiff's requests to proceed *in forma pauperis* on his Third Complaint and Fourth Complaint are granted.

      C.     Standard of Review

Under both the Prison Litigation Reform Act, 28 U.S.C. § 1915A, and the *in forma pauperis* statute, 29 U.S.C. § 1915(e)(2), a district court must dismiss a complaint if it is frivolous or malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B). *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (finding both Section 1915 and Section 1915A to be applicable to a prisoner proceeding *in forma pauperis*).

It is axiomatic that district courts are required to read *pro se* complaints liberally, *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (citations omitted), and to construe them "to raise the strongest arguments that they suggest." *Gerstenbluth v. Credit Suisse Securities (USA) LLC*, 728 F.3d 139, 142-43 (2d Cir. 2013) (quotations and citations omitted). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations in the complaint." *Harrington v. Cnty. of Suffolk*, 607 F.3d 31, 33 (2d Cir. 2010); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

Nevertheless, a complaint must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the...claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (quotations and citation omitted); see also *Anderson News, LLC v.*

11

*American Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012), *cert. denied by Curtis Circulation Co. v. Anderson News, LLC*, --- U.S. ----, 133 S. Ct. 846, 184 L. Ed. 2d 655 (2013) (accord). However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "'Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557); *see also Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Retirement Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (accord). The plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678; *see also In re Amaranth Natural Gas Commodities Litig.*, 730 F.3d 170, 180 (2d Cir. 2013).

D.     Section 1983

Section 1983 of Tile 42 of the United States Code provides, in relevant part:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. "Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, --- U.S. ----, 132 S. Ct. 1657, 1661, 182 L. Ed. 2d 662 (2012). Thus, to state a Section 1983 claim, a plaintiff must allege: (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d

121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)); *see also Rehberg v. Paulk*, --- U.S. ----, 132 S. Ct. 1497, 1501-02, 182 L. Ed. 2d 593 (2012).

      1.     Release from Custody

     As indicated in both the October Order and January Order, to the extent plaintiff again seeks to be released from custody, such relief is not available in a Section 1983 action. *See, e.g., Keyes v. Juul*, 270 F. Supp. 2d 327, 330 (E.D.N.Y. 2003) ("[I]nsofar as plaintiff seeks release from custody, he can do so only on a properly submitted petition seeking a writ of habeas corpus, not in a Section 1983 action."); *see generally Preiser v. Rodriguez*, 411 U.S. 475, 490, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973) (holding that habeas relief is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release from custody). "Requests for release from custody must be brought under the narrow remedy available in federal habeas corpus, not through a damage action." *Baker v. New York State Executives and Officers*, No. 12-civ-1090, 2012 WL 2358162, at *2 (E.D.N.Y. June 20, 2012); *see also Muhammad v. Close*, 540 U.S. 749, 750, 124 S. Ct. 1303, 158 L. Ed. 2d 32 (2004) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus"). Accordingly, plaintiff's Section 1983 claims seeking release from custody are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(l) for failure to state a claim for relief.[2]

---

[2]     The dismissal of plaintiff's Section 1983 claims seeking release from custody is without prejudice to plaintiff filing a petition seeking a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241, *et seq.*

2.   Damages Claims

Plaintiff's Section 1983 claims seeking damages in the Third Complaint and the Fourth Complaint are in the nature of false arrest, false imprisonment, defamation and malicious prosecution. Where, as here, a plaintiff files a civil rights action seeking damages, *inter alia*, for false arrest, false imprisonment, defamation or malicious prosecution before the termination of the criminal proceedings against him, "it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." *Wallace v. Kato*, 549 U.S. 384, 393-94, 127 S. Ct. 1091, 166 L. Ed. 2d 973 (2007); *see also Heck v. Humphrey*, 512 U.S. 477, 487 n. 8, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994) ("[I]f a state criminal defendant brings a federal civil rights action, abstention may be an appropriate response to the parallel state-court proceedings."). "If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn that conviction, *Heck* will require dismissal [of the Section 1983 claims]; otherwise, the civil action will proceed, absent some other bar to suit." *Wallace*, 549 U.S. at 394. Accordingly, plaintiff's Section 1983 claims in the Third Complaint and the Fourth Complaint seeking damages are stayed pending the termination of the underlying criminal proceedings against him. The consolidated case shall be administratively closed, **with leave to reopen within two (2) weeks of the termination of the underlying criminal proceedings against plaintiff.**

**PLAINTIFF IS ADVISED THAT A FAILURE TO SEEK TO REOPEN THIS ACTION WITHIN TWO (2) WEEKS OF THE TERMINATION OF THE UNDERLYING CRIMINAL PROCEEDINGS AGAINST HIM MAY RESULT IN THE DISMISSAL OF HIS SECTION 1983 CLAIMS WITH PREJUDICE.**

### 3. Claims against Moralles, Robinson and ATM Real Estate

"To state a claim under 42 U.S.C. § 1983, the plaintiff must show that a defendant, acting under color of state law, deprived him of a federal constitutional or statutory right." *Sykes v. Bank of America*, 723 F.3d 399, 405-06 (2d Cir. 2013); see also *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) ("[A] litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action...A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action...State action requires both an alleged constitutional deprivation...and that the party charged with the deprivation must be a person who may fairly be said to be a state actor." (alterations, quotations and citations omitted)). Section 1983 liability may only be imposed upon wrongdoers "who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191, 109 S. Ct. 454, 102 L. Ed. 2d 469 (1988) (quotations and citation omitted); *see also Hafer v. Melo*, 502 U.S. 21, 28, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991) ("Congress enacted § 1983 to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." (quotations and citations omitted)). Moralles, as the superintendent of the building in which plaintiff lived; Robinson, as a tenant in that same building; and ATM Real Estate, as the owner of that building, were not acting "under color of state law" for purposes of Section 1983 with respect to the conduct attributed to them in the complaint.

15

Nevertheless, "[a] private actor may be liable under § 1983…if there is a sufficiently close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Sykes*, 723 F .3d at 406 (quotations, internal quotations and citations omitted); *see also Fabrikant*, 691 F.3d at 206-07 ("Conduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character that it can be regarded as governmental action…[T]here must be such a close nexus between the state and the challenged action that the state is responsible for the specific conduct of which the plaintiff complains." (quotations, alterations, emphasis and citations omitted)). "Anyone whose conduct is fairly attributable to the state can be sued as a state actor under § 1983." *Filarsky*, 132 S. Ct. at 1661; *see also Fabrikant*, 691 F.3d at 207 ("The fundamental question…is whether the private entity's challenged actions are 'fairly attributable' to the state." (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838, 102 S. Ct. 2764, 73 L. Ed. 2d 418 (1982))). Three main tests have emerged to determine when the actions of a private entity can be attributable to the state:

> For the purposes of section 1983, the actions of a nominally private entity are attributable to the state . . . (1) [when] the entity acts pursuant to the coercive power of the state or is controlled by the state ('the compulsion test'); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity has been delegated a public function by the state ('the public function test).

*Fabrikant*, 691 F.3d at 207 (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (alteration in original)).

Even reading the complaints liberally and drawing all reasonable inferences therefrom in

16

favor of the plaintiff, there is no basis on which to find that Moralles, Robinson and ATM Real Estate were acting under color of state law for purposes of Section 1983 with respect to the conduct attributed to them in the complaints. Accordingly, plaintiff's Section 1983 claims against Moralles, Robinson and ATM Real Estate are dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim for relief, unless, **within thirty (30) days from the date this case is re-opened as set forth above,** plaintiff files an amended complaint pleading sufficient facts from which it may plausibly be inferred that Moralles, Robinson and ATM Real Estate were acting under color of state law within the meaning of Section 1983.

      E.     Filing Injunction

As noted above, during the approximate ten (10) month period from July 15, 2013 to May 1, 2014, plaintiff has filed four (4) *in forma pauperis* complaints in this Court against largely the same defendants alleging a variety of wrongdoings related to his November 5, 2012 arrest and subsequent state criminal prosecution. These complaints have been consolidated and administratively closed with leave to re-open within two (2) weeks of the termination of the underlying criminal proceedings against plaintiff. Notwithstanding the Court's October Order and January Order, plaintiff filed new actions against largely the same defendants alleging largely the same claims related to his November 5, 2012 arrest and subsequent prosecution. As of the date of this Order, the underlying criminal proceedings against plaintiff have not terminated. *See* New York State Unified Court System, https://iapps.courts.state.ny.us/webcrim (Last visited on November 18, 2014).

Under the All-Writs Act, a federal district court "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "The All-Writs Act grants district courts the power, under certain circumstances, to enjoin parties from filing further lawsuits." *MLE Realty Assocs. v. Handler*, 192 F.3d 259, 261 (2d Cir. 1999); *see also Matter of Hartford Textile Corp.*, 613 F.2d 388, 390 (2d Cir. 1979) (holding that the All Writs Act "grant[s] the district court power *sua sponte* to enjoin further filings in support of frivolous and vexatious claims.") "The district courts have the power and the obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel." *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000) (quotations and citation omitted); *see also Hong Mai Sa v. Doe*, 406 F.3d 155, 158 (2d Cir. 2005) ("If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system." (quotations and citation omitted)). "The filing of repetitive and frivolous suits constitutes the type of abuse [of the judicial process] for which an injunction forbidding further litigation may be an appropriate sanction." *Shafii v. British Airways, PLC*, 83 F.3d 566, 571 (2d Cir. 1996); *see also Lau*, 229 F.3d at 123 ("The issuance of a filing injunction is appropriate when a plaintiff abuses the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive proceedings." (quotations, alterations and citations omitted)). The following factors should be considered in determining whether to restrict a litigant's future access to the courts:

18

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, *e.g.*, does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigation has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Safir v. United States Lines Inc.*, 792 F.2d 19, 24 (2d Cir. 1986); *see also Iwachiw v. New York State Dep't of Motor Vehicles*, 396 F.3d 525, 528 (2d Cir. 2005) (accord). "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Safir*, 792 F.2d at 24.

The court must first provide a litigant with notice and an opportunity to be heard before imposing a filing injunction, *see Lau*, 229 F.3d at 123; *Moates v. Barkley*, 147 F.3d 207, 208 (2d Cir. 1998) (*per curiam*), and the filing injunction must be narrowly tailored so as to preserve the litigant's right of access to the court, *see Board of Managers of 2900 Ocean Avenue Condominium v. Bronkovic*, 83 F.3d 44, 45 (2d Cir. 1996) (holding that filing injunctions "must be appropriately narrow."); *SBC 2010–1, LLC v. Morton*, --- F. App'x ----, 2013 WL 6642410, at * 2 (2d Cir. Dec. 18, 2013) (summary order) (affirming the district court's issuance of a filing injunction on the basis, *inter alia*, that it was "narrowly crafted"); *Malcolm v. Board of Education of Honeove Falls–Lima Central School District*, 506 F. App'x 65, 70 (2d Cir. Dec. 26, 2012) (summary order) (accord).

The Third Complaint and Fourth Complaint are plaintiff's third and fourth attempts since July 2013 to litigate essentially the same claims alleging wrongdoings related to his November 5, 2012 arrest and subsequent state criminal prosecution. Given the Court's "obligation to protect the public and the efficient administration of justice from individuals who have a history of

19

litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel" *Lau*, 229 F.3d at 123, plaintiff is warned that similar, future actions will not be tolerated. If plaintiff persists in filing actions asserting claims previously raised in any of the consolidated Complaints, the Court will issue an order to show cause why he should not be required to seek leave of this Court before filing any future actions in this Court.

Finally, plaintiff is cautioned that Federal Rule of Civil Procedure 11 applies to *pro se* litigants, see *Maduakolam v. Columbia Univ.*, 866 F.2d 53, 56 (2d Cir. 1989) ("Rule 11 applies both to represented and pro se litigants."); *Ginther v. Provident Life and Cas. Ins. Co.*, 350 F. App'x 494, 496 (2d Cir. 2009) (affirming a district court's imposition of Rule 11 sanctions against a *pro se* litigant), and that should he file another repetitive action, it is within the Court's authority to impose sanctions against him. *See* Fed. R. Civ. P. 11.

F.     Motions to Appoint Counsel

28 U.S.C. § 1915(e)(1) provides that a "court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). Courts possess substantial discretion to determine whether appointment of counsel for civil litigants is appropriate. *Ferrelli v. River Manor Health Care Center*, 323 F.3d 196, 203 (2d Cir. 2003). When deciding whether to appoint counsel to an indigent civil litigant under § 1915(e)(1), the threshold inquiry is whether there is "some likelihood of merit" to the litigant's position. *Johnston v. Maha*, 606 F.3d 39, 41 (2d Cir. 2010); *see also Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) ("[C]ounsel should not be appointed in a case where the merits of the indigent's claim are thin and his chance of prevailing are therefore poor."); *see also Hodge v. Police Officers*, 802

F.2d 58, 61 (2d Cir. 1986) (stating that "the district judge should first determine whether that indigent's position seems likely to be of substance"). If the threshold showing has been met, the court should next consider the following prudential factors:

> [T]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Hodge*, 802 F.2d at 61-62; *see also Johnston*, 606 F.3d at 42 (applying the *Hodge* factors); *Carmona*, 243 F.3d at 632 (holding that "[o]nly after an initial finding that a claim is likely one of substance, will we consider secondary factors such as the factual and legal complexity of the case, the ability of the litigant to navigate the legal minefield unassisted, and any other reason why in the particular case appointment of counsel would more probably lead to a just resolution of the dispute"). However, those factors are not exclusive and "[e]ach case must be decided on its own facts." *Hodge*, 802 F.2d at 61.

Upon review of plaintiff's application and the Complaints, the Court finds that the appointment of *pro bono* counsel is not warranted at this stage of the litigation. Although there may be some likelihood of merit to plaintiff's claims, the legal issues presented in this case are not particularly complex; plaintiff appears capable of preparing and presenting his case and investigating the crucial facts; and there is no special reason to appoint counsel at this time. Accordingly, plaintiff's Motions to Appoint Counsel are denied without prejudice to renewal when this case is trial ready. In the interim, plaintiff must either retain counsel or proceed *pro se*.

21

IV.  Conclusion

For the reasons set forth above, plaintiff's applications to proceed *in forma pauperis* in the third and fourth actions are granted; the Third Complaint and the Fourth Complaint are consolidated for all purposes, including trial, to proceed under the Lead Case, docket number 13-4047; plaintiff's Section 1983 claims seeking release from custody are *sua sponte* dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim for relief, without prejudice to filing a petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241, *et seq.*; plaintiff's Section 1983 claims seeking damages are stayed pending termination of the underlying criminal proceedings against him; and plaintiff's Section 1983 claims against Moralles, Robinson, ATM Real Estate are *sua sponte* dismissed in their entirety with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim for relief unless, **within thirty (30) days from the date this case is re-opened plaintiff files an amended complaint in accordance with this Order**.  The Court hereby notifies plaintiff that if he files another *in forma pauperis* complaint against these same defendants alleging the same claims related to his November 5, 2012 arrest and subsequent prosecution, the Court will require that plaintiff first seek leave of Court before submitting such filing.  In addition, the Court may direct the Clerk of the Court to return to plaintiff, without filing, any such action that is received without a clear application seeking leave to file, and the Court may *sua sponte* dismiss the case with prejudice.  Plaintiff's applications for the appointment of *pro bono* counsel are denied without prejudice to renewal when this case is trial ready, if so warranted at that time.

The Clerk of Court shall: (1) re-open the Lead Case for the limited purpose of consolidating Third Complaint and the Fourth Complaint with the Lead Case and amending the

22

caption in the Lead Case in accordance with this Order; (2) administratively close the actions under docket numbers 14-civ-1382 and 14-civ-2392; (3) administratively close the Lead Case, with leave to reopen within two (2) weeks of the termination of the underlying criminal proceedings against plaintiff; and (4) pursuant to Rule 77(d)(1) of the Federal Rules of Civil Procedure, serve notice of entry of this order upon all parties in accordance with Rule 5(b) of the Federal Rules of Civil Procedure. No summonses shall issue at this time.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

**SO ORDERED**.

s/ Sandra J. Feuerstein

Sandra J. Feuerstein
United States District Judge

Dated: November 18, 2014
Central Islip, New York

23